1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10

| | | |
|---|---|---|
| VIVIAN M. SALVATERA, | ) | 1:10-cv-01464-SKO |
| | ) | |
| | ) | **ORDER REGARDING PLAINTIFF'S** |
| Plaintiff, | ) | **SOCIAL SECURITY COMPLAINT** |
| | ) | |
| v. | ) | (Doc. 1) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

18

19                                          **BACKGROUND**

20        Plaintiff Vivian M. Salvatera ("Plaintiff") seeks judicial review of a final decision of the

21 Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for

22 Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles

23 II and XVI of the Social Security Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  The matter is currently

24 before the Court on the parties' briefs, which were submitted, without oral argument, to the

25 Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

26

27 ─────────────

28        [1] The parties consented to the jurisdiction of the United States Magistrate Judge.  (Docs. 8, 10.)  *See* 28 U.S.C.
§ 636©; Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

1

**FACTUAL BACKGROUND**

2   Plaintiff was born in 1957, attended college for two years but did not attain a degree, and

3   previously worked as an accounting clerk for over 25 years. (Administrative Record ("AR") 25, 101,

4   109, 117-20.)  On March 18, 2008, Plaintiff filed applications for DIB and SSI, alleging disability

5   beginning on April 14, 2007, due to severe headaches, dizziness, lack of concentration, diabetes,

6   hypertension, fibromyalgia, irregular heartbeat, anxiety, back pain, and muscle spasms. (AR 101-05,

7   109-14, 146.)  She amended her disability onset date to October 9, 2007, her 50th birthday. (AR 24.)

8   **A.   Relevant Medical Evidence [2]**

9   From January 17, 2008, through October 23, 2008, Plaintiff was treated by Virgilio C. Ereso,

10   M.D. (AR 336-43.)  Plaintiff was seen for complaints of back pain, body aches, fibromyalgia, fever

11   and cold symptoms, headaches, muscle spasms, anxiety, nausea, dizziness, and hypertension.

12   (AR 336-43.)

13   Plaintiff was seen at Health Haven Medical Clinic ("Health Haven") from March 14, 2008,

14   through April 17, 2008, for a variety of medical symptoms, including migraines, insomnia, neck pain

15   and spasm, hypertension, arrhythmia, anxiety, dizziness, and generalized body pain. (AR 239-43.)

16   A physical exam of Plaintiff indicated "negative/normal" findings as to her elbows, wrists, and

17   fingers. (AR 239.)

18   On May 14, 2008, Miguel Hernandez, M.D., performed a comprehensive medical evaluation

19   of Plaintiff. (AR 248-51.)  Plaintiff's chief complaints were migraine headaches, fibromyalgia, and

20   major depression, which Plaintiff stated impacted her ability to work. (AR 248.)  Dr. Hernandez

21   examined Plaintiff's range of motion, testing her spine, hips, knees, ankles, shoulders, elbows,

22   wrists, and fingers/thumbs. (AR 250.)  The general finding regarding Plaintiff's motor strength was

23   that it was "5/5 throughout.  Grip strength testing using the Jamar dynamoter is achieved to about

24

25   [2] Plaintiff's brief raises arguments related to ALJ's purported error in evaluating Plaintiff's physical impairments
26   and does not contend that the ALJ erred in her findings regarding Plaintiff's mental limitations.  As such, the Court will
   only consider the medical evidence related to Plaintiff's physical condition, as Plaintiff has waived any arguments
27   concerning the ALJ's decision as to mental impairments.  See *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006)
   (explaining that arguments not raised before the district court are generally waived).  Further, as Plaintiff's arguments
28   relate only to the ALJ's findings as to Plaintiff's impairments in her upper extremities, specifically her alleged hand and
   wrist pain impairments, the medical evidence discussed will primarily focus on those findings.

30 pounds of pressure bilaterally." (AR 250.) Dr. Hernandez' functional assessment and medical source statements indicated that Plaintiff could stand, sit, and/or walk six hours in an eight-hour day, required no assistive devices, could lift and carry 20 pounds occasionally and 10 pounds frequently, had no postural or manipulative limitations, and environmental limitations were attributable to her major depression. (AR 251.)

On June 10, 2008, Sadda V. Reddy, M.D., performed a physical residual functional capacity assessment ("RFC") and case analysis.[3] (AR 252-60.) Dr. Reddy opined that Plaintiff could frequently lift 10 pounds and occasionally lift 20 pounds, could sit, stand, and/or walk six hours in an eight-hour day, and had unlimited push/pull capacity. (AR 253.) Plaintiff had no manipulative, visual, or communicative limitations. (AR 255-56.) Dr. Reddy concluded that Plaintiff should be limited to a light RFC after considering Plaintiff's myofascial pains and poorly controlled hypertension. (AR 253-54.) An environmental limitation to avoid concentrated exposure to hazards was recommended "in view of [Plaintiff's] history of migraines and prior pathway ablation for arrhythmias." (AR 254, 256.) Dr. Reddy noted that the medical records indicated "generalized body pains" but "no established diagnosis of fibromyalgia" and "[n]o documentation of required tender points." (AR 254.) Plaintiff had "normal gait, ROM [range of motion] and strength." (AR 254.)

On July 9, 2008, Plaintiff was seen at Health Haven and indicated that she had a "new onset [of] hand/wrist pain." (AR 284.) Plaintiff indicated that her "pain score" was three out of a scale of ten. (AR 284.)

On August 5, 2008, an electromyography ("EMG") and nerve conduction studies were performed based on Plaintiff's complaints of numbness and pain in her hands. (AR 348-49.) Gurpreet S. Dhaliwal, M.D., evaluated the testing and concluded that Plaintiff had "an abnormal study, which is suggestive of median nerve neuropathy at the wrist bilaterally." (AR 349.) Dr.

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

3

1  Dhaliwal found that the results were "consistent with mild carpal tunnel syndrome bilaterally. There

2  was no electrodiagnostic evidence of cubital tunnel syndrome, myopathy or cervical radiculopathy

3  bilaterally. [Plaintiff] was advised to try [a] wrist brace." (AR 349.)

4       On September 11, 2008, B. Ginsburg, M.D. "affirm[ed the] initial light RFC w[ith] hazard

5  environmental precautions." (AR 292-94.)

6       From January 5, 2009, through December 14, 2009, Plaintiff was treated by Dr. Ereso,

7  (AR 330-35, *see also* AR 307-12.) During her visits, Plaintiff complained of headaches, neck pain,

8  back pain, coughing, sore throat, tiredness, foot pain, and flu symptoms. (AR 307-12.)

9       On July 10, 2009, Dr. Dhaliwal provided an electrodiagnostic report indicating that Plaintiff

10 was "further evaluated with EMG and nerve conduction studies to check for possibility of focal

11 entrapment neuropathy, polyneuropathy, myopathy, or cervical radiculopathy." (AR 344.) After

12 evaluating the test results, Dr. Dhaliwal concluded that they were "consistent with mild carpal tunnel

13 syndrome" and that "[t]here ha[d] been no significant change as compared to [Plaintiff's] previous

14 study of 8/5/2008." (AR 345.)

15      On November 23, 2009, Edda Q. Calaustro, M.D., provided a complete physical medical

16 report. (AR 302-06, *see also* AR 325-29.) Dr. Calaustro indicated that she treated Plaintiff from

17 March 14, 2008, through November 12, 2009; however, medical records were not provided.

18 (AR 302.) Dr. Calaustro provided an RFC assessment and indicated that Plaintiff was diagnosed

19 with anxiety, hypertension, degenerative joint disease, dizziness, headaches/migraine, and

20 fibromyalgia. (AR 302.) Dr. Calaustro opined that Plaintiff could occasionally lift and carry up to

21 10 pounds but never anything heavier, occasionally perform simple grasping with both hands but

22 could only perform occasional fine manipulation with her left hand and never with her right, and

23 occasionally reach, handle, and push/pull. (AR 303-05.)

24 **B.     Lay Testimony**

25      On March 26, 2007, Plaintiff completed an adult function report. (AR 125-32.) Plaintiff

26 indicated that she lived with her family and that her daily activities consisted of making her bed,

27 preparing and eating breakfast, taking medicines, watching television, and doing "a little household

28 chores if feeling okay, otherwise just sitting down if feeling dizzy." (AR 125.) Plaintiff noted that

4

1   she had no problem with her personal care but would need reminders to take her medicine.

2   (AR 126-27.) Plaintiff stated that she would "prepare food sometimes . . . maybe twice a week" and

3   would clean her bathroom and do laundry "once a week for 2 hours." (AR 127.) Plaintiff indicated

4   that she would walk "five times a week," go to the store, and "visit family," although she "usually"

5   would not go out alone because she would "feel dizzy." (AR 128.) Plaintiff would shop to "buy

6   groceries and household stuff" "twice a week for 2 hours." (AR 128.) Plaintiff stated that her

7   hobbies were "watching TV, praying, going to church, reading, [and] computer stuffs," which she

8   would do "every day," although she noted that the "reading and computer stuffs" would give her a

9   "severe headache." (AR 129) She would spend time with other people in person and would go to

10  church, prayer meetings, and the park, although she could no longer "lead [the] prayer group and

11  socialize." (AR 129-30.)

12      On March 26, 2008, Plaintiff's husband, Alexander Salvatera, completed a third-party

13  function report. (AR 133-40.) Mr. Salvatera stated that Plaintiff's daily activities consisted of

14  making the bed, eating breakfast, taking her medication, watching television, walking around, and

15  doing "a little household chores." (AR 133.) Plaintiff was able to do cleaning and laundry once a

16  week for two hours. (AR 135.) Her husband indicated that she would walk five times a week and

17  would ride in the car, but would not go out alone because she would "usually feel dizzy." (AR 136.)

18  Plaintiff would shop for groceries and household goods and could handle money. (AR 136.) Mr.

19  Salvatera stated that Plaintiff "cannot stay in one place doing the same task, especially reading and

20  computer work." (AR 137.) Plaintiff would need help lifting items and would feel dizzy when

21  bending, squatting, and standing. (AR 138.) Mr. Salvatera noted that Plaintiff was "not comfortable

22  and confident of herself to get a job because of her illness." (AR 139.)

23  **C.   Administrative Hearing**

24      The Commissioner denied Plaintiff's applications initially and again on reconsideration;

25  consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

26  (AR 40-43, 45, 46-50.) On December 16, 2009, ALJ Sandra K. Rogers held a hearing in which

27  Plaintiff and vocational expert ("VE") George A. Meyers testified. (AR 22-34.)

28

1        **1.      Plaintiff's Testimony**

2        Plaintiff testified that she was 52 years old on the date of the hearing and lived with her

3    husband. (AR 25). Plaintiff completed two years of college but did not attain a degree or certificate,

4    and had worked as an accounting clerk for over 25 years. (AR 25.) Plaintiff indicated that she had

5    pain in her lower and upper back, wrist, heels, and head, including "really bad, severe . . . and

6    migraine headaches." (AR 26.) Plaintiff testified that she had been diagnosed with fibromyalgia,

7    migraines, depression, and anxiety disorder. (AR 26-27.) Plaintiff stated that she stopped working

8    because she would have a "severe headache," was unable to concentrate, and would "make

9    mistakes." (AR 27.) She was unable to do data entry because it would hurt her wrists. (AR 27.)

10   As such, she was unable to stay at her job because she was "useless" to her employer. (AR 27.)

11       Plaintiff stated that she would wake up with "headache and all the pains," and would then

12   take her medication or else she could not "function at all." (AR 27.) Plaintiff testified that she could

13   not do her "daily task like even wash the plates," and that she could not "focus [her] attention, even

14   to watch TV." (AR 27.) Plaintiff stated that even after her medication would take effect, she could

15   not "watch TV for 30 minutes" because she was unable to concentrate and was "constantly" in pain.

16   (AR 28.) Plaintiff said she was no longer able to read, write, or "explore in the computer" because

17   the computer would hurt her wrists and her headache would worsen. (AR 28.) She was unable to

18   walk or "stand straight" due to anxiety and fibromyalgia and due to pain in her ankle, heels, back,

19   shoulder, and head. (AR 29.) Plaintiff said she had difficulties in sitting and lifting, and was unable

20   "even to hold a glass of water." (AR 30.) Plaintiff stated that using a telephone would cause

21   "excruciating pain" that would "last[] forever." (AR 30.) Plaintiff testified that it was "okay" for

22   her to attend church twice a week for an hour, but that she would "struggle" when she had to kneel.

23   (AR 30.)

24       **2.      VE Testimony**

25       The VE testified that Plaintiff's former position as an accounting clerk was a sedentary,

26   skilled job. (AR 31.) The ALJ asked the VE whether a hypothetical person could perform Plaintiff's

27   past relevant work if that person was someone of Plaintiff's age with the same education and work

28   experience who was restricted to lifting and carrying 20 pounds occasionally and 10 pounds

1   frequently, could stand, walk, and sit six hours out of an eight-hour day, should avoid concentrated

2   exposure to hazards and heights, and who was moderately limited in the ability to understand,

3   remember, and carry out detailed instructions.  (AR 31.)  The VE testified that a hypothetical person

4   could not perform Plaintiff's past relevant work but could perform other work, including working

5   as a timekeeper, a stock clerk for apparel, and doing office help.  (AR 31.)

6         Plaintiff's counsel questioned the VE if there would be any erosion of the available jobs that

7   could be performed if the limitations were changed to occasional lifting of 10 pounds, occasional

8   reaching, handling, pushing, and pulling, and occasional simple grasping but no fine manipulation

9   with her right hand and occasional fine manipulation with her left.  (AR 32  The VE responded that

10  the jobs that could be performed would be "totally eliminate[d]."  (AR 32.)

11  **D.   ALJ's Decision**

12        On January 26, 2010, the ALJ issued a decision finding Plaintiff not disabled since April 14,

13  2007, the alleged date of her disability onset.  (AR 9-21.)  Specifically, the ALJ found that

14  (1) Plaintiff met the insured status requirements of the Act through December 31, 2012; (2) Plaintiff

15  had not engaged in substantial gainful activity since April 14, 2007, the alleged disability onset date;

16  (3) Plaintiff had "severe" impairments of fibromyalgia, degenerative disc disease, and depression

17  based on the requirements in the Code of Federal Regulations; (4) Plaintiff did not have an

18  impairment or combination of impairments that met or equaled one of the impairments set forth in

19  20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Plaintiff had the RFC to perform light work, should

20  avoid concentrated exposure to hazards such as heights and dangerous moving machinery, and was

21  mentally moderately limited in her ability to understand, remember, and carry out detailed

22  instructions but could perform simple, repetitive tasks; (6) Plaintiff was unable to perform past

23  relevant work; (7) Plaintiff was defined as an individual approaching advanced age on the alleged

24  disability onset date; (8) Plaintiff had at least a high school education and was able to communicate

25  in English; (9) the transferability of job skills was not material to the disability determination

26  because Plaintiff was "not disabled" under the Medical-Vocational Rules whether or not Plaintiff

27  had transferrable job skills; (10) there were jobs that exist in significant numbers in the national

28

1   economy that Plaintiff could perform; and (11) Plaintiff had not been under a disability as defined

2   in the Social Security Act since April 14, 2007, through the date of the decision.  (AR 14-21.)

3       Plaintiff sought review of this decision before the Appeals Council.  On March 3, 2010, the

4   Appeals Council denied review.  (AR 1-5.)  Therefore, the ALJ's decision became the final decision

5   of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

6   **E.    Plaintiff's Contentions on Appeal**

7       On August 10, 2010, Plaintiff filed a complaint before this Court seeking review of the ALJ's

8   decision.  (Doc. 1.)  Plaintiff contends that the ALJ erred by (1) finding that Plaintiff's upper

9   extremity impairments were non-severe, and (2) failing to include manipulative limitations in the

10  RFC.  (Doc. 18.)

11                          **SCOPE OF REVIEW**

12      The ALJ's decision denying benefits "will be disturbed only if that decision is not supported

13  by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

14  1999).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that

15  of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must

16  determine whether the Commissioner applied the proper legal standards and whether substantial

17  evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d

18  909, 911 (9th Cir. 2007).

19      "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v.*

20  *Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  "Substantial evidence" means "such

21  relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

22  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*,

23  305 U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both

24  the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and

25  may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v.*

26  *Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

27

28

1

**APPLICABLE LAW**

2       An individual is considered disabled for purposes of disability benefits if he or she is unable

3 to engage in any substantial, gainful activity by reason of any medically determinable physical or

4 mental impairment that can be expected to result in death or that has lasted, or can be expected to

5 last, for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A),

6 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).   The impairment or

7 impairments must result from anatomical, physiological, or psychological abnormalities that are

8 demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of

9 such severity that the claimant is not only unable to do his previous work, but cannot, considering

10 his age, education, and work experience, engage in any other kind of substantial, gainful work that

11 exists in the national economy.   42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

12       The regulations provide that the ALJ must undertake a specific five-step sequential analysis

13 in the process of evaluating a disability.   In the First Step, the ALJ must determine whether the

14 claimant is currently engaged in substantial gainful activity.   20 C.F.R. §§ 404.1520(b), 416.920(b).

15 If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment

16 or a combination of impairments significantly limiting him from performing basic work activities.

17 *Id.* §§ 404.1520(c), 416.920(c).   If so, in the Third Step, the ALJ must determine whether the

18 claimant has a severe impairment or combination of impairments that meets or equals the

19 requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.   *Id.*

20 §§ 404.1520(d), 416.920(d).   If not, in the Fourth Step, the ALJ must determine whether the claimant

21 has sufficient RFC despite the impairment or various limitations to perform his past work.   *Id.*

22 §§ 404.1520(f), 416.920(f).   If not, in the Fifth Step, the burden shifts to the Commissioner to show

23 that the claimant can perform other work that exists in significant numbers in the national economy.

24 *Id.* §§ 404.1520(g), 416.920(g).   If a claimant is found to be disabled or not disabled at any step in

25 the sequence, there is no need to consider subsequent steps.   *Tackett v. Apfel*, 180 F.3d 1094,

26 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

27

28

1

**DISCUSSION**

2

3

**A.   The ALJ Did Not Err in the Step Two Determination Regarding Plaintiff's Upper Extremity Impairments**

4        While the ALJ's decision determined at Step Two that Plaintiff had "severe" impairments

5   of fibromyalgia, degenerative disc disease, and depression, the ALJ also determined that Plaintiff's

6   complaints for irregular heartbeat, diabetes, hypertension were "non-severe," and her complaint of

7   hand and wrist pain was "not medically determinable." (AR 14-15.) Plaintiff contends that the ALJ

8   erred regarding the finding as to Plaintiff's hand and wrist pain, as Plaintiff had complained of this

9   pain in her disability reports, her physician had found positive phalens and tinels signs on clinical

10  examination, and an EMG nerve conduction study confirmed a diagnosis of carpal tunnel syndrome.

11  (Doc. 18, 4:16-19.)  Defendant contends that Plaintiff failed to demonstrate that her hand and wrist

12  pain were severe.  (Doc. 19, 4:21-6:3.)

13        **1.      Legal Standard**

14        A plaintiff bears the burden of proving that she is disabled. *Meanel v. Apfel*, 172 F.3d 1111,

15  1113 (9th Cir. 1999); 20 C.F.R. §§ 404.1512(a), 416.912(a).  The mere diagnosis of an impairment

16  is not sufficient to sustain a finding of disability.  *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir.

17  1985); *see also Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of impairment

18  is insufficient proof of disability).  A person is disabled if her impairments are severe and meet the

19  durational requirement of twelve months. 20 C.F.R. §§ 404.1505, 404.1520(a), 416.905, 416.920(a).

20  A severe impairment is one that significantly limits the physical or mental ability to perform basic

21  work activities.  *Id.* §§ 404.1520(c), 416.920(c).

22        To satisfy the Step Two requirement of a severe impairment, the claimant must prove the

23  physical or mental impairment by providing evidence consisting of signs, symptoms, and laboratory

24  findings; the claimant's own statement of symptoms alone will not suffice.  *See id*. §§ 404.1508,

25  416.908.  In determining whether an impairment or combination of impairments is "severe," an ALJ

26  should carefully examine the medical findings that describe the impairments and make an "informed

27  judgment" about the limitations and restrictions the impairment and related symptoms impose on

28

10

the person's physical and mental ability to do basic work activities. Social Security Ruling[4] ("SSR") 96-3p.

An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at Step Two if the medical evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairments have no more than a minimal effect on his physical or mental abilities to perform basic work activities). SSR 85-28. The Step Two inquiry is a *de minimis* screening device to dispose of groundless or frivolous claims. *Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

### 2.   Plaintiff Did Not Demonstrate Her Hand and Wrist Pain Was Severe

In analyzing Plaintiff's hand and wrist pain at Step Two, the ALJ noted that Plaintiff "complained of wrist and hand pain in July 2008 . . . . [She] was referred to a specialist; however there does not appear to be any follow-up visits or subsequent complaints of pain. There was no diagnosis of any impairment with her wrists." (AR 15.) As such, the ALJ found that "this impairment seems to be not medically determinable." (AR 15.)

Plaintiff contends that she "testified to hand/wrist pain which limits her ability to perform data entry, use the phone and hold dishes. Her complaints are supported by identifiable objective findings." (Doc. 18, 4:24-25.) However, as noted above, Plaintiff cannot establish a physical impairment by her own statement of symptoms alone. *See* 20 C.F.R. §§ 404.1508, 416.908. Instead, she must provide "medical evidence consisting of signs, symptoms, and laboratory findings." *Id.* Although Plaintiff's brief contends that there were "identifiable objective findings" and that the ALJ should have considered this "evidence," Plaintiff fails to articulate what those findings were and what evidence the ALJ failed to consider in making a determination as to the severity of Plaintiff's

---

[4] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding precedent upon ALJs. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 692 n.2 (9th Cir. 1999).

1   impairments.   (Doc. 18, 4:24-27.)   Plaintiff's brief is devoid of any analysis to support her

2   contentions. (*See* Doc. 18, 4:16-27.)

3       Plaintiff provides a "summary of relevant evidence" that indicates that in July 2008 Dr. Ereso

4   found a "new onset of pain in [Plaintiff's] hand/wrist," in August 2008 an EMG and nerve

5   conduction study determined medium nerve neuropathy consistent with carpal tunnel syndrome, and

6   Dr. Colaustro provided an RFC assessment indicating that Plaintiff was limited in her ability to lift,

7   grasp, and do fine manipulation.  (Doc. 18, 2:20-3:5.)  Plaintiff fails to establish how these records

8   support a finding that Plaintiff's hand/wrist impairment was severe.

9       On July 9, 2008, Plaintiff was seen at Health Haven; the medical notes state that Plaintiff has

10  a "complaint of new onset [of] hand/wrist pain." (AR 284). Plaintiff indicated that her "pain score"

11  was three out of a scale of ten. (AR 284.)  On August 5, 2008, Dr. Dhaliwal evaluated Plaintiff's

12  EMG and nerve conduction studies and determined that the results were "consistent with mild carpal

13  tunnel syndrome bilaterally." (AR 348-49.)  Plaintiff "was advised to try a wrist brace." (AR 349.)

14  On July 10, 2009, Dr. Dhaliwal evaluated further EMG and nerve conduction studies and found that

15  "[t]here ha[d] been no significant change as compared to [Plaintiff's] previous study of 8/5/2008."

16  (AR 344-45.)  Plaintiff fails to demonstrate how the diagnoses of "mild carpal tunnel" and the

17  recommendation of a "wrist brace" were significantly limiting and rise to the level of a severe

18  impairment.  Further, although Plaintiff was treated on July 9, 2008, for "hand/wrist pain," the ALJ

19  correctly notes that there is no evidence in the record of "any follow-up visits or subsequent

20  complaints of pain." (AR 15.)

21      Plaintiff states that her treating physician, Dr. Calaustro, provided an RFC assessment which

22  opined that Plaintiff was able to occasionally lift 10 pounds, and could do simple grasping, reaching,

23  handling, and feeling, but could never do fine manipulation with her right hand and only occasional

24  fine manipulation with her left.  (Doc. 18, 3:1-5; *see also* AR 302-05.)  Plaintiff admits, however,

25  that Dr. Calaustro "does not provide her medical reports." (Doc. 18, 3:1.)  Additionally, Plaintiff

26  fails to explain how Dr. Calaustro's findings demonstrate a severe impairment.

27      The medical opinions of three types of medical sources are recognized in Social Security

28  cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat

the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Further, if a doctor's conclusions are not consistent with her own findings, that is a specific and legitimate reason for the ALJ to reject that opinion. *See Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (per curiam) (treating doctor's conclusory opinion that claimant was disabled was properly rejected by ALJ when it was internally inconsistent and not consistent with doctor's prior medical reports)

Here, the ALJ found that Dr. Calaustro's opinion was "internally inconsistent," "quite conclusory, and provides little explanation of the evidence relied upon in forming her opinion. There are no treatment records from Dr. Calaustro, so there is no indication as to what objective evidence is the basis of her opinion, the consistency of the treatment, what treatment was rendered or for what conditions." (AR 18.) As such, the ALJ properly provided specific and legitimate reasons in finding that Dr. Calaustro's opinion was afforded "little weight." (AR 18; *see also Lester*, 81 F.3d at 830-31.)

As noted, the ALJ determined that Plaintiff's hand and wrist pain was "not medically determinable." (AR 15.) It is Plaintiff's burden to prove that she is disabled. *Meanel*, 172 F.3d at 1113 (9th Cir. 1999); 20 C.F.R. §§ 404.1512(a), 416.912(a). Plaintiff fails to establish that the record contains medical evidence showing that Plaintiff's hand and wrist pain was a severe impairment that significantly limited Plaintiff's physical ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). As such, even assuming *arguendo* that the ALJ erred and Plaintiff's condition was medically determinable, such error is not prejudicial as there is no evidence

in the record to indicate the severity of the condition or how it affects Plaintiff.[5] No limitations were identified. Further, the ALJ resolved Step Two in Plaintiff's favor regarding specific impairments, and there were no limitations indicated in the record that the ALJ failed to account for in the later steps.

Plaintiff failed to meet her burden at Step Two regarding her alleged hand and wrist pain, and the ALJ correctly determined that Plaintiff's impairment did not rise to the level of being severe.

**B.      The ALJ Did Not Err in Failing to Include Manipulative Limitations in the RFC**

Plaintiff contends that the ALJ erred by failing to include manipulative limitations in the RFC determination. (Doc. 18, 5:1-19.) It appears that Plaintiff is asserting that the ALJ ignored the findings of Dr. Dhaliwal concerning Plaintiff's EMG and nerve conduction studies and improperly discredited Plaintiff's testimony as to the severity of her complaints. (Doc. 18, 5:1-19.) Defendant contends there is substantial evidence in the record to support the ALJ's RFC finding. (Doc. 19, 9:10-10:21.)

**1.      Medical Findings**

**a.      Legal Standard**

"[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); see also 20 C.F.R. § 416.927(e)(2) (the determination of the RFC is a decision "reserved to the Commissioner"). Courts will "affirm the ALJ's determination of [a claimant's] RFC if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

---

[5] Courts cannot use "mandatory presumptions and rigid rules" when determining when error is harmless but must instead conduct a "case-specific application of judgment, based upon examination of the record." *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009). "The federal 'harmless-error' statute, now codified at 28 U.S.C. § 2111, tells courts to review cases for errors of law 'without regard to errors' that do not affect the parties' 'substantial rights.' That language seeks to prevent appellate courts from becoming 'impregnable citadels of technicality.'" *Id.* at 407-08 (citation omitted). The Ninth Circuit determined that the holding in *Sanders* applies to Social Security disability claims and further explained that "[w]here harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm." *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011).

1

2

        **b.**    **The ALJ Properly Determined the RFC with Regards to Manipulative Limitations**

3

4

5

6

7

8

Plaintiff states that "[t]he ALJ gave great weight to the opinion of consultative examiner Dr. Hernandez to substantiate her RFC . . .  His report is dated May 14, 2008.  The EMG study was performed on August 5, 2008 . . .  The ALJ totally ignores the EMG evidence and the positive clinical findings." (Doc. 18, 5:9-12.) Plaintiff again, however, provides no analysis to support her contentions and fails to explain how the EMG and nerve conduction studies support a different RFC finding.  Further, Plaintiff fails to identify what manipulative limitations the ALJ did not assess.

9

10

11

12

13

14

15

16

Plaintiff refers to the report of Dr. Dhaliwal on August 5, 2008, which determined that the EMG and nerve conduction studies were "consistent with mild carpal tunnel syndrome bilaterally" and recommended that Plaintiff "try [a] wrist brace."  (AR 349.)  Plaintiff cannot refer to any functional limitations assessed by Dr. Dhaliwal because there were no functional limitations indicated. (AR 348-49.) It is not entirely clear what evidence the ALJ purportedly "ignored," as she specifically noted with regard to Plaintiff's wrist and hand pain that Plaintiff was "referred to a specialist" but, as noted above, correctly determined that this impairment was "not medically determinable." (AR 15.)

17

18

19

20

21

22

23

24

25

26

Plaintiff does not assert that the ALJ improperly gave great weight to Dr. Hernandez' findings, but instead seems to imply that Dr. Hernandez' opinion on May 14, 2008, could not have properly determined any impairments due to Plaintiff's wrist and hand pain as this pain occurred after the date of Dr. Hernandez' examination. (Doc. 5, 5:9-11.) The Court notes that Dr. Hernandez tested Plaintiff's wrists and fingers and found that her motor strength was "5/5 throughout" and that her "[g]rip strength test[ed] . . . to about 30 pounds of pressure bilaterally." (AR 250.)  However, even if there had been a shift in Plaintiff's abilities less than three months later when Dr. Dhaliwal evaluated the EMG and nerve conduction studies, Dr. Dhaliwal's conclusions of "mild carpal tunnel" and the need to wear a "wrist brace" do not support Plaintiff's contention that the RFC was incorrect as to Plaintiff's manipulative limitations.

27

28

Plaintiff points to no medical evidence in the record that determined Plaintiff had any manipulative limitations the ALJ did not consider.  The ALJ determined that there was evidence in

  
the record to establish that Plaintiff's hand and wrist pain was not medically determinable. (AR 15.) As such, the ALJ properly determined that Plaintiff had no manipulative limitations in the RFC.

### 2.      Plaintiff's Credibility

Plaintiff appears to contend that the ALJ improperly rejected Plaintiff's testimony and determined that she was not credible when rejecting her manipulative limitations.  (Doc. 18, 5:13-19.)  Defendant asserts that the ALJ properly assessed Plaintiff's credibility and that Plaintiff failed to challenge the factors the ALJ considered.  (Doc. 19, 6:6-9:9.)

In considering Plaintiff's credibility, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent.  They are inconsistent with the above residual functional capacity assessment." (AR 19.)

### a.      Legal Standard

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.* The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection.  *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

1   *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks

2   omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009);

3   20 C.F.R. §§ 404.1529, 416.929.  Other factors the ALJ may consider include a claimant's work

4   record and testimony from physicians and third parties concerning the nature, severity, and effect of

5   the symptoms of which he complains.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

6
7               **b.     The ALJ Provided Clear and Convincing Reasons for Rejecting Plaintiff's Subjective Complaints**

8               In this case, the ALJ found that Plaintiff's medically determinable impairments could

9   reasonably be expected to produce the alleged symptoms.  (AR 19.)  Therefore, absent affirmative

10  evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and

11  convincing.  *Vasquez*, 572 F.3d at 591.

12              Plaintiff limits her challenge of the ALJ's credibility determination as to the findings

13  concerning Plaintiff's manipulative limitations.   The ALJ provided numerous reasons for

14  determining that Plaintiff was not credible, including inconsistency with the medical record and

15  inconsistency with her own statements as to her allegations that she had difficulty sitting, standing,

16  and walking.  (AR 19.)  As Plaintiff did not raise arguments related to these findings, any argument

17  is waived.  *See Greger*, 464 F.3d at 973.  As such, Plaintiff implicitly concedes that the ALJ properly

18  determined that Plaintiff was not entirely credible based on those findings.

19              Plaintiff only takes exception to the ALJ's finding that:

20          The claimant also alleged that she cannot lift even a full glass of water (Hearing Testimony).  As noted above, the claimant's wrist and hand impairment is not

21          medically determinable.  The record reflects that the claimant did not complain of this limitation on numerous occasions . . . .  The claimant's grip strength test also

22          contradicts the claimant's allegations . . . . Furthermore, the claimant reported that she is able to clean the bathroom, do laundry, do light cooking, and go grocery

23          shopping.

24  (AR 20.)

25              Plaintiff asserts that "[t]here is no evidence that the Plaintiff is malingering. And, although

26  the Plaintiff might be able to participate in the above named activities,[the ALJ] does not cite the

27  frequency or duration that the Plaintiff is able to participate in these activities." (Doc. 18, 5:17-19.)

28

1    Plaintiff's argument is not entirely clear.  She does not appear to contest the ALJ's finding

2    regarding Plaintiff's testimony that "she cannot lift even a full glass of water" as being not supported

3    by medical evidence and not medically determinable.  In assessing credibility, the ALJ may rely in

4    part upon inconsistencies between Plaintiff's testimony and the medical record.  Although "a finding

5    that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the

6    severity of his pain," *Light*, 119 F.3d at 792,  it is one factor that may be considered.  *See Carmickle*

7    *v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical

8    record is a sufficient basis for rejecting the claimant's subjective testimony."(citation omitted));

9    *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("Citing the conflict

10   between [the plaintiff's] testimony of subjective complaints and the objective medical evidence in

11   the record, and noting the ALJ's personal observations, the ALJ provided specific and substantial

12   reasons that undermined [the plaintiff's] credibility.")

13   Plaintiff instead seems to assert that the ALJ improperly considered her ability to participate

14   in daily activities, as Plaintiff contends that "although the Plaintiff might be able to participate in the

15   above named activities, [the ALJ] does not cite the frequency or duration that the Plaintiff is able to

16   participate in these activities."  (Doc. 18, 5:17-19.)

17   The ALJ noted that Plaintiff was "able to clean the bathroom, do laundry, do light cooking,

18   and go grocery shopping."  (AR 20.) An ALJ may appropriately consider Plaintiff's activities of

19   daily living in determining that she was not entirely credible, but the mere fact of a claimant's

20   carrying on certain daily activities does not necessarily detract from credibility as to overall

21   disability.  *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).  However, a negative inference is

22   permissible where the activities contradict the other testimony of the claimant, or where the activities

23   are of a nature and extent to reflect transferable work skills.  *See Thomas v. Barnhart*, 278 F.3d 947,

24   958-59 (9th Cir. 2002)*; Morgan*, 169 F.3d at 600.  Here, the ALJ noted that there were

25   inconsistencies between Plaintiff's statement that she "cannot lift even a full glass of water" and her

26   report concerning her ability to "clean the bathroom, do laundry, do light cooking, and go grocery

27   shopping," which all imply Plaintiff's use of her hands and wrists.  (AR 20.)

28

18

1    "Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an

2    allegation . . . and those findings are supported by substantial evidence in the record, our role is not

3    to second-guess that decision." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989); *see also Morgan*,

4    169 F.3d at 690.   As the ALJ's reasons were properly supported by the record and sufficiently

5    specific, the Court must thus conclude that the ALJ rejected Plaintiff's testimony on permissible

6    grounds and did not arbitrarily discredit Plaintiff's testimony.   *See Turner v. Comm'r of Soc. Sec.*,

7    613 F.3d 1217, 1224 n.3 (9th Cir. 2010).

8                                        **<u>CONCLUSION</u>**

9           Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

10   evidence in the record as a whole and is based on proper legal standards.   Accordingly, the Court

11   DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.

12   The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue,

13   Commissioner of Social Security, and against Plaintiff Vivian M. Salvatera.

14

15

16   IT IS SO ORDERED.

17   **Dated:    February 22, 2012                          /s/ Sheila K. Oberto**
                                              UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28

                                               19